ORIGINAL

Approved: _____
RUSHMI BHASKARAN
Assistant United States Attorney

Before:  HONORABLE STEWART D. AARON
United States Magistrate Judge      **22 MAG 1052**
Southern District of New York

------------------------------------x
                                    :
UNITED STATES OF AMERICA            :   COMPLAINT
                                    :
         - v. -                     :   Violations of 21 U.S.C.
                                    :   § 846; 18 U.S.C. 924(c),
                                    :   and 2.
TAVAUGHN ODDMAN, and                :
MARCO DRUSKOVICH,                   :
                                    :   COUNTY OF OFFENSE:
                                    :   BRONX
             Defendants.            :
                                    :
------------------------------------x

STATE OF NEW YORK              ) ss:
SOUTHERN DISTRICT OF NEW YORK  )

JEREMY VEIT, being duly sworn, deposes and says that he is a Detective with the New York City Police Department ("NYPD"), and charges as follows:

## COUNT ONE
### (Narcotics Conspiracy)

1. In or about February 2022, in the Southern District of New York and elsewhere, TAVAUGHN ODDMAN and MARCO DRUSKOVICH, the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

2. It was a part and an object of the conspiracy that TAVAUGHN ODDMAN and MARCO DRUSKOVICH, the defendants, and others known and unknown, would and did distribute and possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

3. The controlled substances that TAVAUGHN ODDMAN and MARCO DRUSKOVICH, the defendants, conspired to distribute and possess

1

with intent to distribute were: (i) 40 grams and more of mixtures and substances containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Section 841(b)(1)(B); (ii) mixtures and substances containing a detectable amount of cocaine and cocaine base, in violation of Title 21, United States Code, Section 841(b)(1)(C); and (iii) less than 50 kilograms of marijuana, in violation of Title 21, United States Code, Section 841(b)(1)(D).

(Title 21, United States Code, Section 846.)

## COUNT TWO
### (Possession with Intent to Distribute Narcotics)

4. On or about February 1, 2022, in the Southern District of New York and elsewhere, TAVAUGHN ODDMAN, the defendant, intentionally and knowingly distributed and possessed with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

5. The controlled substances involved in the offense were: (i) 40 grams and more of mixtures and substances containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Section 841(b)(1)(B); (ii) mixtures and substances containing a detectable amount of cocaine and cocaine base, in violation of Title 21, United States Code, Section 841(b)(1)(C); and (iii) less than 50 kilograms of marijuana, in violation of Title 21, United States Code, Section 841(b)(1)(D).

(Title 21, United States Code, Sections 812, 841(a)(1), and 841(b)(1)(B), (C), and (D).)

## COUNT THREE
### (Firearms Offense)

6. On or about February 1, 2022, in the Southern District of New York and elsewhere, TAVAUGHN ODDMAN, the defendant, during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, namely, the narcotics offenses charged in Counts One and Two of this Complaint, knowingly did use and carry firearms, and, in furtherance of such crime, did possess firearms, and did aid and abet the use, carrying and possession of firearms, to wit, a 40-caliber handgun and a Ruger Redhawk revolver.

(Title 18, United States Code, Sections 924(c)(1)(A)(i) and 2.)

**COUNT FOUR**
**(Possession with Intent to Distribute Narcotics)**

7.   On or about February 1, 2022, in the Southern District of New York and elsewhere, MARCO DRUSKOVICH, the defendant, intentionally and knowingly distributed and possessed with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

8.   The controlled substances involved in the offense were mixtures and substances containing a detectable amount of fentanyl, cocaine, and cocaine base, in violation of Title 21, United States Code, Section 841(b)(1)(C).

(Title 21, United States Code, Sections 812, 841(a)(1), and 841(b)(1)(C).)

The bases for my knowledge of the foregoing charges are, in part, as follows:

9.   I am a Detective with the NYPD and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation, my examination of reports and records, and my conversations with other law enforcement agents and other individuals. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

10.   Based on my participation in this investigation, my review of law enforcement records and reports, and my conversations with other law enforcement officers, I am aware of the following, in substance and in part:

   a.   On or about the morning of February 1, 2022, I and other members of the NYPD (the "NYPD Officers" or the "Officers") went to a particular building ("Building-1") in the Bronx, New York, to execute an arrest warrant for Carlos Laureano.[1] In connection with that arrest, the NYPD obtained a search warrant, signed by the Honorable Ona T. Wang, for a particular apartment

---

[1] Laureano has been charged in Indictment 22 Cr. 58 (PAC), for various murder, firearm, and narcotics-related offenses.

("Apartment-1") located on the third floor of Building-1, where there was probable cause to believe that Laureano resided and conducted his narcotics operations. The search warrant authorized the NYPD to search for evidence of, among other things, narcotics trafficking and the use of firearms in furtherance of that trafficking.

  b. At approximately 6:00 a.m., the NYPD Officers entered the lobby (the "Lobby") of Building-1. Upon entering the Lobby, the Officers saw an individual, later identified as MARCO DRUSKOVICH, the defendant, standing at the top of the first flight of stairs, speaking to two individuals, who appeared to be under the influence of narcotics, and who were standing at the bottom of the flight of stairs.

  c. As the Officers approached DRUSKOVICH, DRUSKOVICH yelled, in substance and in part, and in the direction of the third floor (i.e., where Apartment-1 is located), that the police were coming. At this point, the NYPD Officers believed that DRUSKOVICH may have been conducting a narcotics sale and was alerting Laureano about the police's arrival. The NYPD Officers placed DRUSKOVICH under arrest. They then searched DRUSKOVICH and found the following in his jacket pocket: (i) approximately 19 black vials and 15 yellow vials, each containing a rock-like substance that appeared to be, based on my training and experience, cocaine base; (ii) 6 ziplock bags, each containing a white powdery substance that appeared to be, based on my training and experience, cocaine; and(iii) approximately 61 glassines of a substance that appears to contain fentanyl, for the reasons explained below.

  d. I and other NYPD officers then approached Apartment-1. After announcing our presence and knocking on the door, I heard sounds coming from within Apartment-1, but no one opened the door. The NYPD Officers then attempted to open forcibly the door to Apartment-1. Once partially opened, the NYPD Officers saw an individual, later identified as TAVAUGHN ODDMAN, the defendant, push the door shut to prevent the Officers from entering.

  e. Eventually, the NYPD Officers were able to overcome ODDMAN's resistance and enter Apartment-1. By the time they entered, Laureano had attempted to escape through the fire exit, but was apprehended by NYPD Officers stationed outside Apartment-1.

  f. When the NYPD Officers opened the door, ODDMAN ran to a bathroom and threw to the ground a fanny pack (the "Fanny

4

Pack") that he had been carrying.  ODDMAN was detained while the NYPD Officers completed the search of Apartment-1.

   g. Pursuant to the search warrant, the NYPD Officers conducted a search of Apartment-1, which appeared to be a stash house for a narcotics operation.  For example, in plain view in the living room, I saw a table ("Table-1") with glassine bags, a white, powdery substance that I believe to be fentanyl for the reasons described below, and other narcotics paraphernalia, as depicted in the photograph below.



The glassine bags and the powdery substance on Table-1 appeared to be the same glassines and substance that DRUSKOVICH had in his jacket.

   h. The NYPD Officers also searched a bedroom ("Bedroom-1") in Apartment-1. The door to Bedroom-1 was open when the NYPD Officers entered it.  On a table in Bedroom-1, the NYPD found what appeared to be cocaine, cocaine base, yellow and black vials (like the kind found on DRUSKOVICH), and paraphernalia that I know from my training and experience is used to cut and package cocaine and cocaine base, as depicted in a photograph below.



i.  In an open closet within Bedroom-1, the NYPD found two firearms on a shelf: (i) a 40-caliber firearm I believe to be a "ghost" gun (*i.e.*, a gun assembled by its user without a serial number), loaded with 1 bullet; (ii) a Ruger Redhawk revolver with 8 bullets. On the same shelf, the NYPD Officers found a ziplock bag ("Ziplock-1") containing a white powdery substance that field tested positive for approximately 100 grams of fentanyl. In addition, the NYPD Officers found bullets on the shelf and the floor of the same closet. The fentanyl, firearms and bullets are depicted in the photographs below.






j.    Furthermore, the white powdery substance in Ziplock-1 in Bedroom-1 appears to be the same as the substance in the glassines that DRUSKOVICH was carrying, as well as the same substance that was on Table-1.  Accordingly, I believe that the glassines that DRUSKOVICH carried, and white powdery substance on Table-1, contained fentanyl.

k.    In another bedroom ("Bedroom-2") in Apartment-1, the NYPD found mason jars filled with what appears to be resale quantities of marijuana, as depicted in the photograph below.



7

1. After discovering the above-described evidence of narcotics trafficking, ODDMAN was placed under arrest in Apartment-1. In addition, NYPD Officers opened the Fanny Pack, which contained approximately $1,500 in U.S. currency. Based on my involvement in this investigation, my search of Apartment-1, and my training and experience, I believe this cash represents the proceeds of narcotics sales.

WHEREFORE, I respectfully request that TAVAUGHN ODDMAN and MARCO DRUSKOVICH, the defendants, be imprisoned, or bailed, as the case may be.

/s/ Jeremy Veit, with permission by SDA
JEREMY VEIT
Detective
NYPD

Sworn to me through the transmission of this
Complaint by reliable electronic means, pursuant to
Federal Rule of Criminal Procedure 4.1, this
First Day of February, 2022

_____
THE HONORABLE STEWART D. AARON
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK